UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL SOARES SOCORRO,

    Petitioner,

v.                                                Case No. 2:11-cv-88
                                                  HON. GORDON J. QUIST

GREG MCQUIGGIN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Michael Soares Socorro filed this petition for writ of habeas corpus challenging his conviction for armed robbery. Petitioner was convicted after a plea and sentenced to a term of imprisonment of 136 to 360 months. Petitioner asserts that he is not guilty of armed robbery and that no armed robbery was ever committed. Petitioner maintains that he did not have an actual weapon, despite making the claim that he had a weapon during the commission of the robbery. Petitioner argues that he agreed to plead no contest after his counsel informed him that the court would sentence him on the low end range of 6-1/2 years imprisonment.

The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be dismissed.

Petitioners' appeals to both the Michigan Court of Appeals and the Michigan Supreme Court were denied. In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Before petitioner can claim that he did not commit an armed robbery, petitioner must first overcome his admission that he committed the crime on the record by showing that his plea was involuntary. The constitutional validity of a guilty plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a guilty plea must be knowing and voluntary in order to

withstand scrutiny under the Due Process Clause. A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 113 S. Ct. 517, 523 (1992). In the present case, after a thorough interrogation of petitioner, the state judge found that petitioner's plea of guilty was entered knowingly and voluntarily.

After a hearing where petitioner insisted he did not have a weapon so he could not be charged with armed robbery, petitioner returned to court later in the day to plead guilty to armed robbery and one supplement in exchange for dismissal of the bank robbery charge. Petitioner indicated that no promises were being made and that he understood the rights that he was giving up by pleading guilty. Petitioner indicated:

THE COURT: Other than this plea agreement, has anyone, and I mean anybody else, tried to use any kind of other promises, or tried to use any kind of force, any threats or any kind of fraud or tricks or other promise of leniency to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anybody told you that it's gonna go easier on you if you plead guilty or harder on you if you don't?

THE DEFENDANT: No, sir.

THE COURT: Do you understand you're gonna give up any claim later on that this really isn't your free choice to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: You don't understand that?

THE DEFENDANT: Yeah, I do understand.

THE COURT: Okay. In – In other words, you can't later come in and say, well, I didn't really mean to plead guilty the day before trial–

THE DEFENDANT: Right.

THE COURT: –it wasn't my free choice to do that. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you're also gonna give up any claim later on that this plea was based on some other kinds of promises, threats, or any other kind of inducements that may have been made to you unless you tell me about those now; do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Are counsel aware of any additional threats, promises or inducements that have been made to this defendant that have yet to be disclosed?

MR. SANFORD: No, your Honor.

MISS SMITH: No, your Honor.

THE COURT: Having heard all of your rights, sir, how do you wanna plead?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty because the – this is your free choice?

THE DEFENDANT: Yes.

THE COURT: You–

THE DEFENDANT: Yes, sir.

THE COURT: Do you believe you are guilty?

MR. SANFORD: As I indicated, your Honor, he doesn't agree with the law so he would probably answer no to that.

THE COURT: Okay.

MR. SANFORD: But, he's – he – he will give you the facts of what occurred.

* * *

THE DEFENDANT: Yeah, I was. And at the point where I had – I had a option of freedom, you know, trying to get someplace, which, if I was able to get some money, then I was able to get – you know, get away from the situation I was in, and that's what I did. I just went in there with basically the same note I wrote 2 years ago, which I copied off the internet, which wasn't exactly in my words.

* * *

THE DEFENDANT: This is written on the – on the note and it's actually on a – on a piece of computer paper, which is by the size of a check and what I did is, I folded it in half. Okay. The note says - And it's basically just a con note, just – you know, I was – basically, we was just bluffing 'cause it's just a con basically just to–

MR. SANFORD: Just read it to him.

> THE DEFENDANT: –get somebody to do something that you want, and that's it. That's basically what it is. There's no threats or anything. I didn't–
>
> MR. SANFORD: Just – Just read it to him–
>
> THE DEFENDANT: Yeah, I'm getting to that point. This is a robbery. "Please put $1,800 on the counter and do not look at me or sound alarm." Which she didn't do – all three of them. "I am watching you so don't make me hurt you. I have a weapon. This money is insured. Your life is worth much more. Bigger bills the better. Do not alert anyone until 5 minutes after I leave. That is all I ask."
>
> MR. SANFORD: So you set that on the counter?

The trial court found a sufficient factual basis for armed robbery and accepted petitioner's guilty plea. At the sentencing hearing, petitioner asked to change or "restore" his plea to a no contest plea. The court denied that request. In the opinion of the undersigned, petitioner has not shown that his plea was involuntary. Moreover, the Michigan courts' decisions to accept petitioner's plea and to deny the appeals were reasonable decisions.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: January 16, 2014